H2E3ACOS                          Sentence

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                           16 CR 296 (PAC)

 5   KELVIN ACOSTA,

 6                 Defendant.

 7   ------------------------------x

 8                                       New York, N.Y.
                                         February 14, 2016
 9                                       3:00 p.m.

10
     Before:
11
                       HON. PAUL A. CROTTY,
12
                                         District Judge
13

14                           APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     MICHAEL D. NEFF
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   JENNIFER E. WILLIS

20   ALSO PRESENT:  Special Agent Aaron Spivack, FBI

21

22

23

24

25
```

1              THE DEPUTY CLERK:  In the matter of docket number 16

2     CR 296, United States of America v. Kelvin Acosta.  Government,

3     please state your appearance.

4              MR. NEFF:  Good afternoon, your Honor.  Michael Neff

5     for the government.  I'm joined at counsel table by FBI Special

6     Agent Aaron Spivack and by Michael DeLuca, an intern in the

7     U.S. attorney's office.

8              MS. WILLIS:  Good afternoon, your Honor.  Jennifer

9     Willis, Federal Defenders of New York, on behalf of Mr. Acosta.

10             THE COURT:  Ms. Willis.  Mr. Acosta, how are you.

11             THE DEFENDANT:  I'm doing good.

12             THE COURT:  Has everybody seen the presentence report?

13             MR. NEFF:  Yes, your Honor.

14             THE COURT:  Any corrections you want to make,

15    Ms. Willis?

16             MS. WILLIS:  No, your Honor.

17             THE COURT:  I'm going to accept the facts as stated in

18    the presentence report as accurate.  The guideline

19    calculations, according to the PSR, which is a variance from

20    what is in the plea agreement, is a offense level of 37 and a

21    criminal history category of II.

22             Do you agree with that, Ms. Willis?

23             MS. WILLIS:  Your Honor, I do understand their

24    calculation and the rationale behind it.  Obviously, Mr. Acosta

25    and I have signed a plea agreement agreeing to a stipulated

H2E3ACOS                          Sentence

1    guideline range, but I do understand and I don't have an

2    objection to the calculations as formulated by probation.

3                 THE COURT:  Mr. Neff?

4                 MR. NEFF:  The government does object, as noted in our

5    letter.  We believe that the facts of this case and in

6    particular the video chats clearly meet or qualify for the

7    enhancement in the guidelines for a depiction of sadistic

8    conduct.  I'm happy to address that further or I'm happy to

9    rely on the admittedly lengthy explanation in our letter for

10   why we believe the enhancement is not a close call.

11                THE COURT:  You think that the offense level should be

12   set at 41?

13                MR. NEFF:  That's correct, your Honor.

14                THE COURT:  At offense level 41 and a criminal history

15   category of II, we're dealing with a sentence of 360 to life,

16   but because there is a statutory maximum here, it is 360.

17                MR. NEFF:  That's exactly right.

18                THE COURT:  I'm going to find the offense level is

19   properly set at 41, criminal history category is II, resulting

20   in the guideline sentence as contemplated by the plea agreement

21   of 360 months.

22                Ms. Willis, do you want to elaborate on your

23   submission?

24                MS. WILLIS:  Your Honor, I do.  I obviously don't want

25   to belabor the points I've already made and your Honor has

1    already reviewed, but I do think it is important, when we're

2    dealing with a contemplated sentence of the length we're

3    talking about, to focus on what is the purpose of punishment.

4              And the statutory minimum here, which is 15 years, is

5    a very weighty and significant sentence.  It is a sentence that

6    is sufficient, sufficient to accomplish the purposes of

7    sentencing.  15 years is an amount which certainly sends a

8    signal to society that courts take this sort of conduct

9    extremely seriously.  It is also a sentence that is more than

10   sufficient for general deterrence, and in particular for

11   sufficient deterrence for Mr. Acosta.

12             Yes, he is someone who has a prior misdemeanor

13   conviction.  And it's obvious by the fact that he sits here

14   that that misdemeanor conviction and the probation certainly

15   wasn't sufficient to deter him.  But he has never had a period

16   of incarceration before.  So, there is no basis to say that 15

17   years, which is a very significant sentence, would be not be

18   enough to deter him, I think there is no evidence of that.

19             And Mr. Acosta -- and it also, before I move on, a

20   significant reason for punishment, in addition to the specific

21   deterrence, that includes rehabilitation for the offender.  And

22   here, Mr. Acosta is someone who -- so it is important to look

23   at not only his conduct, but who he is as a person, the

24   positive aspects of that, but also the things about his history

25   and his character that led to this offense.  Because clearly

what must be of paramount importance to the Court and to

society is to assure that nothing like this happens again.

        And so, just sending him to prison doesn't really get

to the root of what led to him sitting before your Honor.  And

what I attempted to do with the submission, in particular with

the evaluation from the doctor, as well as the memo from the

head of the social work department from my office, is to give

some context to what things in Mr. Acosta's life led to these,

quite frankly, deplorable choices that he made.

        And he had begun, and I think this is crucial as well,

the process of changing himself, of attempting to rehabilitate

himself.  When he was given the probation on the misdemeanor

matter, he did have an opportunity for sex offender probation.

But a key aspect, which I think Ms. Veasley, my social worker,

discussed in her memorandum, was a component of computer

addiction.

        And I should point out Mr. Acosta's parents are in

court here today, and his mother, Reyes Acosta, wrote in her

letter about the fact that there were times where she would go

to work in the morning and Mr. Acosta was on the computer.  She

would come home at the end of a full day of work, and he was

still on the computer.  She talked about the fact that he would

stay in his room on the computer all the time and didn't want

to speak to people and didn't want to do anything else.  And in

the memo from Ms. Veasley and the report from Dr. Termine, it

also speaks about that, and Mr. Acosta himself expressed to

both of them that at the time, all he wanted to do was the

computer, that he had entered this sort of virtual world and

was disconnected from reality.

        So by his computer and his internet access being cut

off at the time of his presentment, that was one of the

conditions of his release when he was out subsequent to the

presentment, prior to his plea before your Honor, his computer

was taken.  His phone was taken, his cell phone that had

internet capabilities, and there were restrictions put in place

on his ability to access the internet, even through someone

else's devices, and he scrupulously adhered to that.  And that

was a key piece in allowing him to engage meaningfully in

treatment.  He demonstrated just in those four or five months

that he was capable of engaging in treatment.

        That's really the question here.  Is he someone who

can be rehabilitated.  Is he someone who can be deterred, can

learn from this experience.  There is nothing that he can do to

change the choices that he has made.  But, what will happen

going forward and how much of a punishment is necessary to

ensure that he makes those changes.

        Prior to being sentenced, prior to knowing what the

end result would be on this case, he committed himself to

making improvements, to changing his mindset, in attempting to

engage with people in a way that would allow him to make

progress, and I think that that's really a crucial element

here.  Even in those few months he demonstrated that.

        The letter from his sister, who was not able to be

here today, you see from her letter that she and the entire

family support him.  But her letter and his mother's letter

talk about the change that they saw just in those few months in

him.  In his engagement with family, being willing to talk more

and be more open.

        And his treatment that he had been doing at Mustard

Seed, the last progress note that they wrote talked about the

fact that, of late, he was more engaged in that treatment, that

he was participating more, even in the group therapy setting,

that he was engaging in that process more as well.  And that

demonstrates that he is capable of that.

        And a sentence in line with the guidelines, which

would be the top of the statutory range, would essentially be

saying that, one, that he cannot be rehabilitated, that he

cannot be redeemed, and that he has nothing more of value to

offer society.

        And while, obviously, he needs to be punished, and I

in no way here or in my submission intended to say anything

that would sound as if we were minimizing the seriousness of

this conduct --

        THE COURT:  You can't minimize the conduct.  I must

sentence him to at least 15 years.

1           MS. WILLIS:  Right.  Exactly, your Honor, and I think

2      that --

3           THE COURT:  Your position is that's enough.

4           MS. WILLIS:  Yes.  Very much so.

5           THE COURT:  Where in your papers do you or Mr. Acosta

6      express remorse for what Mr. Acosta did?

7           MS. WILLIS:  Your Honor, I believe that it's all

8      throughout the submission.  He spoke --

9           THE COURT:  It doesn't pop out at me.

10          MS. WILLIS:  If it does not, your Honor, then that is

11     my error.  I know he spoke to Dr. Termine, I know he spoke to

12     Rachelle Veasley, the social worker in my office, about knowing

13     this is wrong, appreciating the harm that he caused his

14     victims.

15          I think in particular, I highlighted that quote in my

16     portion of the submission understanding that given their age,

17     how clearly they wouldn't have been mentally ready for this

18     sort of conduct, expressing concern that they could have sort

19     of lifelong trust issues because of what he had done, and to

20     the extent that there is not a direct, you know, "I'm sorry for

21     what I've done" quote in here, then that is my error.

22          In my conversations with Mr. Acosta, during the period

23     of time in which he was at liberty and not in custody, during

24     the time in which he has been in custody at the Metropolitan

25     Detention Center, he certainly has expressed remorse.  And if

1    that was not adequately expressed in what I wrote, then that is

2    an oversight that I take responsibility for.  I don't believe

3    that at all reflects on Mr. Acosta's feelings.

4           I think that a lot of the thrust of the work that we

5    were attempting to do as a team within the office was focused

6    on what -- getting to the root cause or at least trying to

7    grapple with what might be the root cause of this behavior.

8    And sort of focusing on that, and what would need to happen for

9    him to be rehabilitated.  And that may be why the tenor of the

10   submission, if it appeared to you it was not only accepting

11   responsibility but also remorseful, would have been because of

12   that, because the thrust of what I was attempting to do was to

13   sort of get at the root cause, and then sort of project what

14   punishment and what other factors would need to happen for him

15   to be rehabilitated.

16          But, certainly, he's expressed to me his remorse.  We

17   had spoken even prior to your Honor coming out about his

18   intention to address the Court, and that was a piece of what he

19   intended to say at the latter portion of these proceedings, was

20   that he is in fact sorry, and is committed, as I think I did

21   express in my submission, to correcting the things in his life

22   and in his mind that allowed this sort of behavior to go on.

23          THE COURT:  Thank you.

24          Mr. Neff.

25          MR. NEFF:  When the Court determines the sentence in

1   this extremely troubling case, I hope that the Court keeps

2   forward in mind predatory, quantity, recidivist and harm.

3           First, predatory.  This is not a typical case

4   involving the production of child pornography, which is bad

5   enough in its own right.  This is far worse.  The defendant

6   tricked minors, he lied to minors, hacked their accounts, and

7   he used his leverage.  He threatened them, he terrified them,

8   and he coerced them to commit unwanted sex acts under threat of

9   public humiliation.  He said he'd expose them, their families,

10  their friends, their schools.

11          The conduct, his conduct, was abhorrent.

12          Second, quantity.  Your Honor, this was not a one-time

13  lapse in judgment.  This was a sustained campaign of preying on

14  children on a daily basis, for years.  And at a minimum for the

15  two years from December 2013 through November 2015, the

16  defendant tried to hack and extort minors.  He admitted he

17  tried 15 to 20 times every day to hack and extort minors.  In

18  total, he coerced 10 to 20 minors to produce child pornography

19  for him.

20          Third, recidivist.  As the Court is aware, in 2014 the

21  defendant was convicted of exactly the same extortionate

22  misconduct.  Except in that case, it happened to be a

23  19-year-old victim instead of 13-, 14-, or 17-year-old victims,

24  as in this case.  In that case, the 2014 case, by hacking her

25  e-mail account, he got his hands on a sex video and he said he

1    wouldn't delete it until she gave him oral sex.  He was

2    arrested as they were meeting in person.

3              In 2014, the defendant expressed alleged remorse, and

4    he got what every convicted defendant hopes for, a second

5    chance.  No jail.  What did he do with it?  He kept preying on

6    our youth every day while on probation.  He didn't stop, he

7    didn't even slow down.  The only change he made was to try to

8    make it harder to catch him.  He stopped meeting with them in

9    person.

10             The defense can make the argument, as it does, that he

11   is a low risk to recidivate, but the evidence tells precisely

12   the opposite story.  Since December 2014, he was on probation.

13   He's been in therapy.  He didn't stop until he was caught

14   again.  And the chats show on various occasions, victims beg

15   him to stop.  Victims cry.  Nothing stopped him.  Even when he

16   was arrested federally in this case, he said he'd just resume

17   his misconduct when he got out of prison.  He said he'd just

18   meet better hackers in jail.  And as the Court noted, he does

19   not truly express remorse.

20             Fourth, and finally, harm.  Judge, in the lead-up to

21   trial, before the defendant pled guilty, I had the opportunity

22   to meet with multiple victims for a number of hours.  Their

23   courage was remarkable.  So was the damage that he had done.

24   They were sobbing when describing what he made them do, how he

25   made them do it, what objects were involved, how they felt.  He

H2E3ACOS                    Sentence

mocked them.  He laughed at them.  He yelled at them.  They did

not have a choice.  He violated them, their bodies, their

dignity, their mind, their health.

     I'm quite mindful that the guidelines range here is

extremely high, but this defendant earned it.

     The defense talked about his history, his character.

I'd respectfully submit his history is one of preying on

children repeatedly.  And his character is one of putting his

basest desires before the health and dignity of our kids.

     To sum up, through his predatory misconduct over and

over again, through his recidivism, through his lack of

remorse, he deserves the weighty sentence the guidelines call

for, and our kids and our community deserve to be protected

from him.

     THE COURT:  Mr. Acosta, this is your opportunity to

speak.  Stay seated if you're more comfortable.

     THE DEFENDANT:  Sorry.  I would like to say that I'm

so sorry what I did to all the girls that I did.  I learned my

lesson.  I know that they suffered, I know what I did was

wrong, and they deserve not one thing I did to them.  And I

learned that now when I got off the computer, I learned that

they deserve respect and they deserve to be treated as women

and not as objects.  And I'm truly apologizing, and I hope one

day they could forgive me, because now I know what I did was

truly wrong.

H2E3ACOS                          Sentence

1          THE COURT:  Anybody else want to be heard?

2          MS. WILLIS:  In response to the question you asked

3     about places in the submission where remorse was mentioned, on

4     page seven of Exhibit D, which was the report from Dr. Termine,

5     there is an extensive quote from Mr. Acosta prompted by her

6     asking about what negative impact his behavior could have had

7     on girls.  The bit I referenced before is they might have trust

8     issues because of this, and he goes on to say "Before this, I

9     didn't care.  I just wanted to get satisfaction and attention.

10    Me, me, me.  I didn't put myself in their shoes or think if

11    that was my sister."  And out of quote, Mr. Acosta now feels

12    sorry and remorseful.  He stated "I was being selfish, taking

13    out my anger.  I can only tell them how sorry I am and selfish

14    and what they're going through for the rest of their lives.

15    They didn't deserve it.  If I think about it, it makes me so

16    depressed, so I don't.  I can't change the past, so I need to

17    move forward and make the future better."

18         THE COURT:  Okay.  I've gone back and I read the

19    criminal complaint filed that led to Mr. Acosta's arrest.  I

20    read the indictment.  I've read the plea agreement and the

21    colloquy in which we took Mr. Acosta's plea back in

22    September 26.  I read Ms. Willis's submission of February 4,

23    government's submission of February 9, and the presentence

24    report dated February 6, 2017.

25         I know there's many other judges who have sat on the

1    bench longer than I have, but I've' been here for 11 and a half

2    years, almost 12 years, and have never seen a crime committed

3    that was so deplorable.  It does so much damage.  We have to

4    wait until page seven of the retained psychology report to get

5    any kind of intimation of regret.

6          The acts that Mr. Acosta committed are, in the words

7    of the presentence report, heinous, cruel, brutal, and

8    degrading.  And he did it repeatedly, causing pain to children

9    and for his own personal pleasure.

10         This is the most deplorable, deprived act that I can

11   imagine, and the children that he was abusing would often say

12   "please stop."  They'd cry.  He was completely indifferent.  He

13   cruelly ignored their requests, and insisted on his own sexual

14   gratification at the expense of others, and he did it, as I

15   say, over and over again, over a long period of time, even as

16   he had been caught.

17         What they were thinking of in the Bronx with the

18   19-year-old imposing a sentence as light as they did shows you

19   that sometimes sentences that are too lenient really encourage

20   people to commit further crimes, as Mr. Acosta did, because he

21   wasn't deterred a single bit.

22         On the other hand, these sentences are unusually long.

23   15 years as called for by the Federal Defenders, the mandatory

24   minimum, is too short.

25         I'm going to impose a sentence of 300 months and a

H2E3ACOS                     Sentence

1    term of supervised release of 10 years.

2              Do you have an order of restitution or forfeiture,

3    Mr. Neff?

4              MR. NEFF:  We don't at this time, your Honor.  We

5    would ask for the Court's permission to submit one within 90

6    days.

7              THE COURT:  Right.  I impose the special assessment of

8    $100.

9              This is subject to the mandatory conditions of

10   supervised release, including registration in the sex registry

11   system.  And the registration has to take place where the

12   defendant resides, where he's employed, where he carries on his

13   vocation or as a student, and he shall provide proof of

14   registration to his probation officer.

15             The standard conditions one through 13 are imposed,

16   and the following additional special conditions are imposed:

17   Mr. Acosta is to participate in vocational and educational

18   courses to better prepare him for future employment

19   opportunities.  He is to participate in outpatient treatment

20   program approved by the probation office, which program will

21   include testing to determine whether he's reverted to using

22   drugs or alcohol.  He shall contribute the costs of services

23   rendered based on the defendant's ability to pay and the

24   availability of third-party payments.  I authorize the release

25   of available drug treatment evaluations and reports, including

1   the presentence investigation report.

2          Mr. Acosta shall undergo a sex offense specific

3   evaluation and participate in an outpatient sex offender

4   treatment and/or outpatient mental health treatment approved by

5   the U.S. probation office.  He shall abide by all the rules,

6   requirements and conditions of the sex offender treatment

7   program, including submission to polygraph testing.  Mr. Acosta

8   is to waive his right of confidentiality and any records for

9   mental health assessment and treatment imposed as a consequence

10  of this judgment, to allow the probation officer to review

11  defendant's course of treatment and progress with the treatment

12  provider.  Mr. Acosta shall pay for the cost of services

13  rendered based on his ability to pay or the availability of

14  third-party payments.  I authorize the release of the reports.

15         Mr. Acosta shall not have any contact with the victims

16  in this case.  This includes any physical, visual, written or

17  telephone contact with such persons.  Additionally, Mr. Acosta

18  shall not directly cause or encourage anyone else to have such

19  contact with the victims.

20         Mr. Acosta shall not have any deliberate contact with

21  any child under 18 years of age unless approved the probation

22  department.  He's not to the loiter within a hundred feet of

23  schoolyards, playgrounds, arcades, or other places primarily

24  used by children under the age of 18.

25         Mr. Acosta is to submit his person, residence, place

H2E3ACOS                    Sentence

1   of business, vehicle, and any other property and computers,

2   electronic communication and data storage devices and other

3   media under his control to a search, on the basis that the

4   probation officer has reasonable suspicion that contraband or

5   evidence of a violation of the conditions of the defendant's

6   probation or supervised release may be found.  The search has

7   to be conducted at a reasonable time and in a reasonable

8   manner.  Failure to submit to a search may be grounds for

9   revocation.  Mr. Acosta is to be supervised in the district of

10  his residence.

11          I must impose the special assessment of $100 and I do

12  so.

13          That's the sentence I intend to impose.  Ms. Willis,

14  do you have any objections, other than the ones you've already

15  voiced?

16          MS. WILLIS:  No, your Honor.

17          THE COURT:  Do you want me to make a recommendation as

18  to place of incarceration?

19          MS. WILLIS:  Yes, your Honor.  I would request that

20  Mr. Acosta be recommended to serve his sentence in close

21  proximity to New York City so as to facilitate his family being

22  able to visit.

23          THE COURT:  I will make that recommendation.

24          MS. WILLIS:  Thank you.

25          THE COURT:  Mr. Acosta, now that I've imposed

H2E3ACOS                    Sentence

1   sentence, I have to advise you that you have the right to

2   appeal the sentence.  If you can't afford to pay the cost for

3   appeal, you can apply for permission to appeal in forma

4   pauperis.  If you so request, my clerk will immediately prepare

5   and file a notice of appeal on your behalf.  The notice of

6   appeal has to be filed within 14 days of the entry of judgment.

7   Judgment will be entered by noontime tomorrow.

8            I note in your plea agreement of September 22, 2016,

9   you agreed to waive your appeal rights to any sentence that was

10  at or below the guideline range of 360 months.  Your sentence

11  is below the guideline range.  Ms. Willis can advise you

12  further on whether or not you have a right of appeal, and if

13  so, on what grounds.

14           Any open counts, Mr. Neff?

15           MR. NEFF:  Yes, your Honor.  The government moves to

16  dismiss all open counts, which in this case are Counts Two

17  through Seven of the indictment.

18           THE COURT:  Counts Two through Seven are dismissed.

19           MR. NEFF:  Just to note for the record, in the plea

20  agreement the defendant agreed to forfeit property used to

21  facilitate his crimes, such as his laptop computer.

22           THE COURT:  That's why I asked you if you had an order

23  of forfeiture.

24           MR. NEFF:  That property is already in the FBI

25  custody, and the government does not seek forfeiture beyond

H2E3ACOS                          Sentence

1    that.

2              THE COURT:  Restitution?

3              MR. NEFF:  We intend to submit an order of restitution

4    to the Court within --

5              THE COURT:  Within 90 days.

6              MR. NEFF:  Exactly.

7              THE COURT:  Okay.  Anything else, Ms. Willis?

8              MS. WILLIS:  No, your Honor.

9              THE COURT:  Thank you very much.

10             MR. NEFF:  Thank you.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25